IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on December 6, 2019

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK ALAN FRYDAY aka<br>MARK ALEN FRYDAY<br><br>and<br><br>LARA JUMAAH MOHAMMED,<br>                  Defendants. | CRIMINAL NO.:<br><br>Grand Jury Original<br><br>VIOLATIONS:<br><br>18 U.S.C. § 371 (Conspiracy)<br><br>18 U.S.C. §§ 201(b)(1)(A) & (C) and 2 (Bribery) |

## INDICTMENT

The Grand Jury charges that:

### Introduction

At all times material to this Indictment:

1.  Beginning in approximately 2014, U.S. military forces were deployed to an airbase near Erbil, Iraq ("EAB"), in support of U.S. military operations against the Islamic State in Iraq and Syria, known as Operation Inherent Resolve ("OIR").

2.  Field Ordering Officers ("FOOs") were U.S. military personnel or civilian employees of the Department of Defense authorized to make local purchases of up to $30,000 to meet mission-critical requirements for deployed U.S. military units. Funds expended by FOOs were important to sustaining U.S. military personnel deployed to EAB and the OIR mission. Official duties of FOOs included authorizing payment for only the reasonable cost of local purchases and not accepting money, gifts, or other things of value from vendors seeking to do business with the military.

1

3. Defendant LARA JUMAAH MOHAMMED was the majority owner and chief executive officer of Government Contractor 1, an Erbil-based company that obtained FOO contracts. She was also the owner of Government Contractor 2, another Erbil-based company that obtained FOO contracts.

4. Defendant MARK ALAN FRYDAY was the chief executive officer of Government Contractor 1 and partnered with MOHAMMED in running Government Contractor 2.

5. Public Official 1 was a FOO deployed to EAB from approximately November 2019 to approximately April 2020.

## COUNT ONE
## Conspiracy to Commit Bribery
## (18 U.S.C. § 371)

6. The introductory allegations in paragraphs 1 through 5 are re-alleged and incorporated by reference as though fully set forth herein.

7. From in or about February 2020 to in or about April 2020, out of the jurisdiction of any particular State or district, defendants FRYDAY and MOHAMMED did knowingly and unlawfully conspire, confederate, and agree together and with each other to commit an offense against the United States, that is: to corruptly give, offer, and promise something of value to Public Official 1, a public official, with intent to influence an official act, in violation of Title 18, United States Code, Section 201(b)(1)(A) & (C).

*Purpose of the Conspiracy*

8. The purpose of the conspiracy was for FRYDAY and MOHAMMED to enrich themselves by paying bribes to Public Official 1 in exchange for Public Official 1's awarding overpriced contracts for military supplies to their businesses.

### *Manner and Means of the Conspiracy*

9. FRYDAY and MOHAMMED carried out the conspiracy through the following manner and means, among others:

   a. FRYDAY and MOHAMMED coordinated in preparing and submitting similarly inflated bids for FOO contracts on behalf of Government Contractor 1 and Government Contractor 2 to create a false appearance of competitive bidding.

   b. FRYDAY and MOHAMMED offered to pay bribes of approximately 20 percent of the value of any contract that Public Official 1 awarded to Government Contractor 1 or Government Contractor 2.

   c. MOHAMMED met with Public Official 1 to pay a bribe in exchange for receiving a specific contract for which Government Contractor 1 and Government Contractor 2 had each submitted inflated bids.

   d. FRYDAY and MOHAMMED attempted to conceal the conspiracy by, among other things, asking Public Official 1 to communicate through a secure messaging system and encouraging Public Official 1 to keep secret their offers to pay bribes.

### *Overt Acts*

10. In furtherance of the conspiracy, and to effect its objects and purposes, FRYDAY and MOHAMMED committed the following overt acts, among others, outside the jurisdiction of any particular State or district:

   a. In February 2020, FRYDAY and MOHAMMED separately responded to Public Official 1's solicitation of bids for rolling chairs, non-rolling chairs, bunk beds, mattresses, and a conference table. On behalf of Government Contractor 1, FRYDAY emailed a quote of $28,075. On behalf of Government Contractor 2, MOHAMMED emailed an identical quote of $28,075. A

third contractor submitted a bid of $14,020. Public Official 1 ultimately decided to buy the rolling and non-rolling chairs from another contractor who had submitted an even lower bid for just those items. A different FOO purchased the bunk beds and mattresses from Government Contractor 2.

b.   On or about March 2, 2020, in the process of delivering the bunk beds, FRYDAY and MOHAMMED spoke to Public Official 1. MOHAMMED told Public Official 1 that she needed to talk to Public Official 1 in private. Once they were alone, MOHAMMED explained that her company's bid was as high as it was because it included 20 percent for Public Official 1. When Public Official 1 asked her to clarify, MOHAMMED said she would have paid approximately 20 percent of the value of the contract directly to Public Official 1 had one of her companies been awarded the contract. MOHAMMED explained that, in the future, she would pay Public Official 1 20 percent of any contract that Public Official 1 awarded to one of her companies. MOHAMMED told Public Official 1 not to tell anyone about their conversation.

c.   On or about March 6, 2020, Public Official 1 solicited bids from three contractors for towing straps and power tools. On or about the same date, MOHAMMED sent Public Official 1 a message asking if Public Official 1 had time to meet or could talk through SnapChat since "snap don't save conversations." On or about March 7, 2020, the third contractor submitted a bid of $15,670. On or about March 11, 2020, FRYDAY submitted a bid of $31,800 on behalf of Government Contractor 1. On or about the same date, MOHAMMED submitted a bid of $29,900 on behalf of Government Contractor 2.

d.   Between about March 6, 2020, and about March 23, 2020, MOHAMMED repeatedly contacted Public Official 1 and asked several times if they could meet. On about March 23, 2020, FRYDAY and MOHAMMED drove to meet Public Official 1. At the meeting place, while FRYDAY waited, MOHAMMED got into Public Official 1's vehicle to talk about the

potential $29,900 contract. Of the proposal she was making, MOHAMMED told Public Official 1, "[E]veryone here, they are doing it like this way." MOHAMMED reiterated the offer to pay 20 percent of the contract value to Public Official 1 in exchange for being awarded the contract. Public Official 1 proposed agreeing on a flat $4,000 bribe but asked that she pay the first half up front. MOHAMMED agreed.

e. During this conversation about the bribe on March 23, 2020, MOHAMMED twice warned Public Official 1, "[D]o not let no one know." MOHAMMED also agreed to meet Public Official 1 the next day to pay the first half of the $4,000.

f. On or about March 24, 2020, FRYDAY and MOHAMMED again drove to meet Public Official 1. At the meeting place, while FRYDAY waited, MOHAMMED got into Public Official 1's vehicle and handed Public Official 1 approximately $2,000 in U.S. currency to influence Public Official 1's awarding of a contract to Government Contractor 2.

(In violation of Title 18, United States Code, Section 371.)

## COUNT TWO
### Bribery of a Public Official
### (18 U.S.C. §§ 201(b)(1)(A) & (C) and 2)

11. Paragraphs 1 through 5 and 10 of this Indictment are alleged and incorporated by reference as if set out in full.

12. From in or about February 2020 to in or about April 2020, out of the jurisdiction of any particular State or district, the defendants, FRYDAY and MOHAMMED, did corruptly give, offer, and promise something of value to Public Official 1 with the intent to influence official acts and to induce Public Official 1 to do and to omit acts in violation of Public Official 1's lawful and official duty; that is, FRYDAY and MOHAMMED offered and gave Public Official 1 money to influence Public Official 1 in the performance of official acts and to induce Public Official 1 to

violate lawful and official duties to the United States Government in awarding contracts to Government Contractor 1 and Government Contractor 2.

(In violation of Title 18, United States Code, Sections 201(b)(1)(A) & (C) and 2.)

A TRUE BILL

_____
Foreperson

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

By: *Michael P. McCarthy*
Michael P. McCarthy
Trial Attorney, Fraud Section

*Michael R. Sherwin*
MICHAEL R. SHERWIN
Acting Attorney of the United States in
and for the District of Columbia

By: *Eric S. Nguyen*
Eric S. Nguyen
Assistant United States Attorney, Public Corruption and Civil Rights Section